Jason Halper
Ryan J. Cooper
**LOWENSTEIN SANDLER LLP**
65 Livingston Avenue
Roseland, New Jersey  07068
973.597.2500
*Attorneys for Defendant*
*Houlihan's Restaurants, Inc.*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| TED PAULY, on behalf of himself, and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>HOULIHAN'S RESTAURANTS, INC.,<br><br>Defendant. | **DOCUMENT ELECTRONICALLY FILED**<br><br>Civil Action No. 12-0025 (JBS) (JS) |

## DEFENDANT'S BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................. ii

INTRODUCTION ........................................................................1

RELEVANT FACTUAL BACKGROUND...............................................5

ARGUMENT ...........................................................................11

I.      PLAINTIFF's MOTION FOR LEAVE TO FILE A SECOND
        AMENDED COMPLAINT SHOULD BE DENIED BECAUSE IT
        IS UNTIMELY UNDER THE COURT'S SCHEDULING ORDER...........11

        A.      Plaintiff's Motion Was Filed After The September 1, 2013
                Court-Ordered Deadline For Amendments To Pleadings
                Expired. .............................................................11

        B.      Plaintiff Cannot Demonstrate The Requisite "Good Cause"
                Under Rule 16(b)(4) To Justify A Modification Of The
                Court's Deadline For Amending Pleadings Under The
                Scheduling Order.................................................15

II.     PLAINTIFF'S MOTION SHOULD ALSO BE DENIED BECAUSE
        HIS PROPOSED AMENDMENT IS FUTILE AS A MATTER OF
        LAW. ...............................................................................21

CONCLUSION ........................................................................26

# TABLE OF AUTHORITIES

**PAGES**

## CASES

*Allen v. V and A Bros., Inc.*,
  208 N.J. 114 (2011) ...........................................................................................24

*In re American Healthcare Management, Inc.*,
  900 F.2d 827 (5th Cir. 1990) ...........................................................................13

*Arcand v. Brother Intern. Corp.*,
  673 F. Supp. 2d 282 (D.N.J. 2009).................................................................23

*Banco Popular N. Am. v. Gandi*,
  184 N.J. 161 (2005) ..........................................................................................26

*In re Burlington Coat Factory Sec. Litig.*,
  114 F.3d 1410 (3d Cir. 1997) ...........................................................................22

*Cannon v. Cherry Hill Toyota, Inc.*,
  161 F. Supp. 2d 362 (D.N.J. 2001).................................................................23

*Capers v. FedEx Ground Package System, Inc.*,
  2012 WL 5818137 (D.N.J. Nov. 15, 2012) ...............................................16, 17

*Dugan v. TGI Friday's Inc.*,
  2011 WL 5041391 (N.J. App. Div. Oct. 25, 2011) .....................................22, 23

*Eastern Minerals & Chemicals Co.*,
  225 F.3d 330, 340 (3d Cir. 2000) ..............................................................16, 17

*Globespanvirata, Inc. v. Texas Instruments Inc.*,
  2005 WL 1638136 (D.N.J. July 12, 2005) .......................................................16

*Harbor Laundry Sales, Inc. v. Mayflower Textile Servs. Co.*,
  2011 WL 6303258 (D.N.J. Dec. 16, 2011).......................................................16

*Hutchins v. United Parcel Service, Inc.*,
  2005 WL 1793695 (D.N.J. July 26, 2005) ............................................ 16, 17-18

*Johnson v. Mammoth Recreations, Inc.*,
   975 F.2d 604 (9th Cir. 1992) ...............................................................................18

*Justice v. Town of Cicero, Ill.*,
   682 F.3d 662 (7th Cir. 2012) ...............................................................................14

*Mercedes-Benz USA, LLC v. ATX Group, Inc.*
   2010 WL 3283544 (D.N.J. Aug. 18, 2010) .......................................................26

*In re Milk Products Antitrust Litigation*,
   195 F.3d 430 (8th Cir. 1999) ...............................................................................18

*Miller v. City of Ithica*,
   2012 WL 1589249 (N.D.N.Y. May 4, 2012) .........................................12, 13, 15

*Nafziger v. McDermott Intern., Inc.*,
   467 F.3d 514 (6th Cir. 2006) ......................................................................... 14-15

*Parker v. Columbia Pictures Industries*,
   204 F.3d 326 (2d Cir. 2000) ...............................................................................21

*Printing Mart-Morristown v. Sharp Elec. Corp.*,
   116 N.J. 739 (1989) ............................................................................................24

*Pullman v. Alpha Media Publishing, Inc.*,
   2013 WL 1290409 (S.D.N.Y. Jan. 11, 2013) ....................................................25

*Rent-A-Center Inc. v. 47 Mamaroneck Avenue Corp.*,
   215 F.R.D. 100 (S.D.N.Y. 2003) ........................................................................21

*Sosa v. Airprint Systems, Inc.*,
   133 F.3d 1417 (11th Cir. 1998) ....................................................................18, 19

*Treusch v. Center Square Supermarket, LLC*,
   2013 WL 1405031 (D.N.J. April 5, 2013).........................................................17

*Turner v. Schering-Plough Corp.*,
   901 F.2d 335 (3d Cir. 1990) ...............................................................................15

*United States v. Locke*,
   471 U.S. 84 (1985).............................................................................................14

*Violette v. P.A. Days, Inc.*,
    427 F.3d 1015 (6th Cir. 2005) ......................................................................13, 14

*Watkins v. Dine Equity, Inc.*,
    2012 WL 3776350 (D.N.J. Aug. 29, 2012) and
    2013 WL 396012 (D.N.J. Jan. 31, 2013)......................................................passim

*Wiater Building & Design, Inc. v. Gutierrez*,
    2013 WL 28090 (N.J. App. Div. Jan. 3, 2013)..................................................25

### RULES

FED. R. CIV. P. 6 ............................................................................................12, 13, 14

FED. R. CIV. P. 11 .......................................................................................................25

FED. R. CIV. P. 15 ...............................................................................................17, 18

FED. R. CIV. P. 16(b) ..........................................................................................passim

Defendant Houlihan's Restaurants, Inc. ("Houlihan's") respectfully submits this brief in opposition to plaintiff Ted Pauly's motion (ECF No. 49) for leave to file a second amended complaint.

## INTRODUCTION

Plaintiff filed this litigation nearly two years ago because he was charged $4 for beer at a restaurant.  Plaintiff originally alleged that he was also charged "steep" prices for "several mixed drinks" at the restaurant (ECF No. 1-1 ¶ 14), but he has since admitted in discovery that he did not purchase any mixed drinks.  Plaintiff also originally alleged that he did not complain about the $4 beer charge at the restaurant because he did not want to "risk looking like a petty cheapskate in front of his dining companions."  ECF No. 22 at 11.  Plaintiff now admits that he dined alone.  Discovery has also revealed that plaintiff does not have any receipts, credit card statements, or other documentation confirming that he visited the restaurant in the first place.  And plaintiff has continued to pursue this case against Houlihan's, even though plaintiff knows that Houlihan's, a franchisor, does not own or operate the restaurant – and that by contract, Houlihan's does not establish the prices for any item sold at the restaurant.  In December 2012, Judge Simandle, in ruling on Houlihan's motion to dismiss, stated that the merits of plaintiff's claims could "be tested soon upon a motion for summary judgment." ECF No. 26 at 15.  Plaintiff has successfully delayed that from happening.

Plaintiff now moves to amend his complaint for a second time, in an attempt to delay this case even further by seeking to add numerous claims and parties.   As a threshold matter, plaintiff's motion is untimely.   This court's Scheduling Order clearly and unambiguously stated that "[t]he time within which to seek amendments to the pleadings or to add new parties will expire on **September 1, 2013**."   ECF No. 33 ¶ 5 (bold in original).   That court-ordered deadline was never extended, nor did plaintiff ever request that it be extended.   Yet, plaintiff did not move for leave to file his proposed second amended complaint until September 3, 2013, two days after the deadline in the Scheduling Order had already expired.   Having missed that filing deadline, plaintiff now bears the burden of proving that there is "good cause" under Rule 16(b)(4) to justify a modification of the court's Scheduling Order to permit plaintiff to belatedly amend his complaint for a second time.   Plaintiff cannot satisfy that heavy burden here.

The proposed amendment seeks to add claims under the New Jersey Consumer Fraud Act and the Truth-in-Consumer, Contract, Warranty and Notice Act ("TCCWNA").   It also seeks to join new parties, including Brick Food, L.L.C. – the franchisee, owner, and operator of the restaurant where plaintiff allegedly visited – and the three individual owners of that limited liability company. However, the proposed amendment does not contain any new facts, and plaintiff has known about the proposed additional claims and parties for some time.

Indeed, the Consumer Fraud Act and TCCWNA claims were asserted in plaintiff's original complaint filed against Houlihan's in November 2011. *See* ECF No. 1-1. But plaintiff voluntarily decided to abandon those claims. In fact, in June 2012, in successfully opposing Houlihan's motion to dismiss, plaintiff argued to the court that this case was *not* based on claims under the Consumer Fraud Act or TCCWNA. *See* ECF No. 22 at 3. Plaintiff ignores this point in his motion. And he has not offered any reason, much less shown the requisite "good cause," for why he should now be allowed to reactivate those abandoned claims.

In addition, plaintiff has known since at least February 2013 that Brick Food, L.L.C. is the franchisee of the restaurant that he allegedly visited, and he has known about the ownership structure of Brick Food, L.L.C. since at least May 2013. Although plaintiff argues in his brief that his proposed amendment is based on information "revealed in recent discovery" (*Pl. Br.* at 1), that is not true. Since the July 26 status conference, at which the court directed plaintiff's counsel to file his motion "by September 1" (*Halper Decl.*, Ex. B (Tr. 15:2-4)), there has been no discovery taken in this case. No additional documents were requested or produced, no additional interrogatories were served, and no depositions were taken. Therefore, plaintiff cannot demonstrate "good cause" under Rule 16(b)(4) to justify a modification of the Scheduling Order.

Besides being untimely, plaintiff's proposed amendment is also futile. Judge Simandle, in dismissing a similar case brought by plaintiff's counsel against Applebee's and IHOP, has already held that TCCWNA does not require restaurants to list prices for drink items on their menus. *See Watkins v. Dine Equity, Inc.*, 11-CV-7182-JBS-AMD, 2012 WL 3776350 (D.N.J. Aug. 29, 2012) and 2013 WL 396012 (D.N.J. Jan. 31, 2013). In addition, there is no legal basis to impose personal liability on the individual members of Brick Food, L.L.C. There are no allegations in the proposed amendment that those individuals sold beer to plaintiff, offered to sell beer to plaintiff, or otherwise had any contact with him.

Plaintiff's motion should therefore be denied. That being said, Houlihan's has consistently argued that the franchisee, not Houlihan's, set the prices at the restaurant that plaintiff allegedly visited. That has been confirmed by a sworn declaration and the franchise agreement produced to plaintiff earlier this year. Accordingly, Houlihan's and Brick Food, L.L.C. (which are both represented by Lowenstein Sandler) do not object to Brick Food, L.L.C. being joined as a defendant. But for the reasons outlined below, all other aspects of plaintiff's motion for leave to amend should be denied. Thus, this case should proceed based on plaintiff's chosen claims for breach of contract and unjust enrichment, and, pursuant to Judge Simandle's directive, Houlihan's and Brick Food, L.L.C. should finally be allowed to test the merits of this case on summary judgment.

## RELEVANT FACTUAL BACKGROUND

Plaintiff is a New Jersey resident.  *See Proposed Second Am. Compl.* ("SAC") (ECF No. 49-2) ¶ 1.  He alleges that on August 11, 2009, he entered a Houlihan's restaurant in Brick, New Jersey.  *Id.* ¶ 16.  According to plaintiff, he "sat at the bar" and ordered a Michelob Ultra bottle of beer that was offered on the menu.  Plaintiff alleges that he received the beer and was charged $4, which he paid in full.  *Id.* ¶¶ 17-20.  He further alleges that he "felt the $4.00 charge for the beer was excessive."  *Id.* ¶ 20.  Yet, plaintiff alleges that after paying for the Michelob Ultra bottle, he proceeded to sit down in the dining area of the restaurant, where he ordered food and another beer, this time a 16-ounce draft of Miller Lite. *Id.* ¶¶ 20-22.  Once again, plaintiff was charged $4, which he paid in full.  *Id.* ¶ 24.

Plaintiff now complains that the prices he was charged for the two beers at the restaurant were "high," and that he was "unable to ascertain" the prices of those beers before purchasing them "because the menus used to offer him beverages did not disclose the prices of most beverages."  *Id.* ¶ 27.  According to plaintiff, had he "known that Houlihan's charged such high prices for drinks, he would have ordered less beer or simply ordered water."  *Id.* ¶ 29.  Plaintiff further complains that the restaurant failed to disclose that it charged lower prices for beers at the bar area during certain times of the day, such as Happy Hour.  *Id.* ¶¶ 26-28.  According to plaintiff, had he known that beers were discounted at the bar

during Happy Hour, he "would have simply stayed at the bar or ordered his Miller
Lite at the bar before moving to the table." *Id.* ¶ 30.

Plaintiff filed suit against Houlihan's in November 2011, more than
two years after he allegedly visited the Brick restaurant and paid for the $4
Michelob Ultra and Miller Lite beers. *See* ECF No. 1-1. The action was originally
filed in the New Jersey Superior Court, Burlington County. After being served
with the complaint, Houlihan's removed the action to this court under the Class
Action Fairness Act, 28 U.S.C. § 1332(d). In his original complaint, plaintiff
purported to bring a class action against Houlihan's for claims under the New
Jersey Consumer Fraud Act and the New Jersey TCCWNA – due to the omission
of beer prices from the menus at the Brick Houlihan's. *See* ECF No. 1-1.

On March 12, 2012, plaintiff filed an amended complaint. *See* ECF
No. 15. The amended complaint contained the same basic allegations as the
original complaint, except plaintiff abandoned his statutory Consumer Fraud Act
and TCCWNA claims. Instead, plaintiff chose to assert claims against Houlihan's
for breach of contract and unjust enrichment. *See Am. Compl.* (ECF No. 15) ¶¶ 25-
35. Houlihan's moved to dismiss the amended complaint on April 9, 2012. *See*
ECF No. 17. Houlihan's argued, among other things, that it could not be liable for
breach of contract or unjust enrichment because it does not own or operate the
Brick restaurant, or control the prices charged for drinks at that restaurant.

Houlihan's made clear that the restaurant "is owned and operated by a Houlihan's franchisee."  ECF No. 17-1 at 10-11; *Decl. of Cynthia Parres* (ECF No. 17-2) ¶¶ 6-8.   In opposing the motion, plaintiff argued that, unlike other lawsuits that plaintiff's counsel has filed against other restaurants, which were based on claims under the Consumer Fraud Act and TCCWNA, the case against Houlihan's "takes a different approach.  Rather than rely on one state's statutory protections, this case is focused on nationally enforceable contract law basics."  ECF No. 22 at 3.

On December 20, 2012, the court denied Houlihan's motion to dismiss.  *See* ECF No. 26.  The court held that "at this early stage of the litigation," plaintiff had satisfied the pleading requirements for claims of breach of contract and unjust enrichment "in order to survive a motion to dismiss."  *Id.* at 15.  The court observed, however, that the merits of plaintiff's claims could "be tested soon upon a motion for summary judgment, presumably prior to certification of any such class."  *Id.* at 15.  With regard to Houlihan's argument that it is a franchisor and did not exercise any control over the Brick franchisee's prices, the court found that the argument was "premature and inappropriate on a motion to dismiss."  *Id.* at 9-10.   Thus, the court held that Houlihan's "will be permitted to raise this argument again in a motion for summary judgment."  *Id.* at 11.

On January 11, 2013, Houlihan's filed its answer to the amended complaint, in which Houlihan's denied that it sold or offered to sell any beer to

plaintiff, denied that plaintiff was not charged a "reasonable price" for the $4 beers he ordered and consumed, denied that plaintiff was entitled to any relief, and denied that this case could be certified as a class action.  *See* ECF No. 31.

On February 13, 2013, the court entered a Scheduling Order.  ECF No. 33.  The Scheduling Order set a discovery schedule, and stated as follows:

> The time within which to seek amendments to the pleadings or to add new parties will expire on **September 1, 2013**.  Except as otherwise permitted in the Federal and Local Rules of Civil Procedure, leave of court is necessary to file an amended pleading.

ECF No. 33 ¶ 5 (bold in original).

The parties thereafter exchanged discovery.  On February 28, 2013, Houlihan's served its Rule 26(a)(1)(A) disclosures, in which it disclosed among other things, that Brick Food, L.L.C. was the franchisee for the restaurant, and that Eric Mund and Arnold Runestad were persons at Brick Food, L.L.C. who had knowledge about the company's Franchise Agreement with Houlihan's and the prices that Brick Food, L.L.C. charged for drinks at the restaurant.  *Halper Decl.*, Ex. C (Rule 26 disclosures).  On May 14, 2013, Houlihan's served its initial document production, which included a copy of the Franchise Agreement between Houlihan's and Brick Food, L.L.C.  *Id.*, Ex. D (Franchise Agreement).  The Franchise Agreement makes clear that Brick Food, L.L.C. owns and operates the restaurant, and Section 4.2.5 of the Franchise Agreement specifically states that the

"*Franchisee alone shall establish any requirements regarding . . . the price charged for any product sold in or at the Premises*."  *Id.* (emphasis added).  The Franchise Agreement also identified that Eric Mund, Charles Mund, and Arnold Runestad were the three principals of Brick Food, L.L.C.  *Id.*, Ex. D (HRI000045).  Also on May 14, Houlihan's produced to plaintiff a copy of the Plenary Retail Consumption License (*i.e.*, a liquor license) issued by the State of New Jersey to Brick Food, L.L.C. for the Brick restaurant.  *Id.*, Ex. E.

Plaintiff, meanwhile, stated in his discovery responses that he does not have any receipts, credit card statements, or other documentation confirming that he visited the Brick restaurant.  *Id.*, Ex. F (Responses to Document Request Nos 1-5).  As such, it appears that plaintiff has nothing more than his own say-so that he visited the Brick restaurant on August 11, 2009, over two years before this lawsuit was filed, and that he paid $4 apiece for two beers.  The only document that plaintiff produced in discovery was an unsigned copy of a class action complaint that he filed against a title agency, based on claims under the New Jersey Consumer Fraud Act and TCCWNA, among other claims.  *Id.*  Plaintiff's counsel in that case was Sander Friedman, who is also plaintiff's counsel here.  *Id.*

In all events, the parties have completed their document productions and served answers to interrogatories.  However, no depositions have been taken because at the July 26, 2013 status conference with the court, plaintiff's counsel

indicated that he was going to seek leave to file another amended complaint to add new claims and join new parties.  *Halper Decl.*, Ex. B (7/26/13 Tr.).  The court directed plaintiff's counsel to file his "motion to amend by September 1."  *Id.*, Ex. B (7/26/13 Tr. 28:14-18).  Plaintiff filed his motion for leave to amend on September 3, 2013, two days after the court's deadline.  *See* ECF No. 49.

The proposed amendment not only repeats plaintiff's claims for breach of contract and unjust enrichment, but also seeks to reactivate the Consumer Fraud Act and TCCWNA claims that were asserted in plaintiff's original complaint filed in November 2011, but subsequently abandoned.  *SAC* ¶¶ 82-95.  The proposed amendment also seeks to add claims for civil conspiracy and "agency." *SAC* ¶¶ 96-113.  In addition, the proposed amendment seeks to join Brick Food, L.L.C., the franchisee, as a defendant.  *SAC* ¶ 4.  The amendment also seeks to join as defendants the three individual members of that limited liability company – Eric Mund, Charles Mund, and Arnold Runestad – as well as any other Houlihan's franchisees that those individuals have ownership interests in.  *SAC* ¶¶ 5-6.

As outlined below, plaintiff's motion should be denied.

## ARGUMENT

I. **PLAINTIFF'S MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT SHOULD BE DENIED BECAUSE IT IS UNTIMELY UNDER THE COURT'S SCHEDULING ORDER.**

### A. Plaintiff's Motion Was Filed After The September 1, 2013 Court-Ordered Deadline For Amendments To Pleadings Expired.

The Scheduling Order entered by the court in this case states: "The time within which to seek amendments to the pleadings or to add new parties will expire on **September 1, 2013**." ECF No. 33 ¶ 5 (bold in original). That deadline was never modified – and it was never asked to be modified. To the contrary, it was reinforced at both the May 28, 2013 and July 26, 2013 status conferences with the court. *See Halper Decl.*, Ex. A (5/28/13 Tr. 64:11-14) ("The scheduling order has September 1 to amend pleadings, but, you know the case law, the sooner the better."); Ex. B (7/26/13 Tr.). In fact, at the July 26 conference, the September 1 deadline for the amendment of pleadings was reinforced no fewer than eleven times on the record, including a directive by the court to plaintiff's counsel to "file your motion by September 1." *Id.*, Ex. B (Tr. 15:2-4). Plaintiff even acknowledges in the first paragraph of his brief that the Scheduling Order gave him "until September 1, 2012 [sic] to file amended pleadings." *Pl. Br.* at 1.

Yet, plaintiff did not seek to amend his complaint and join new parties by September 1. Instead, plaintiff waited until September 3, two days after the deadline had already expired, to file his motion. *See* ECF No. 49. Plaintiff neither

requested nor obtained an extension of time in which to file his motion.  And his motion papers do not provide any reason for not filing the motion by the September 1 deadline in the court's Scheduling Order.

Plaintiff apparently believed that because September 1 was a Sunday on a holiday weekend, he was entitled to extend the court-ordered deadline to the next business day, which was Tuesday, September 3.  Not so.  When a court order states that something must be submitted by a specific date, that means exactly what it says, and a party cannot unilaterally adjust that deadline without prior leave of the court.  Had the court's deadline been stated in terms of hours, days, or a longer unit of time, Rule 6(a) of the Federal Rules of Civil Procedure would have permitted plaintiff to file his motion on the next business day.  However, Rule 6(a) is quite clear that this procedure does *not* apply when, as here, a deadline is a fixed date set by a court order.  *See Miller v. City of Ithaca*, 2012 WL 1589249, *1 (N.D.N.Y. May 4, 2012).  Indeed, here, the court set a specific, stated deadline of "**September 1, 2013**" under the Scheduling Order in which the parties could "seek amendments to the pleadings or to add new parties."  ECF No. 33 ¶ 5 (bold in original).  Rule 6(a) is therefore inapplicable to plaintiff's motion, and plaintiff's papers were required to be filed on or before September 1, 2013 – regardless of whether that deadline fell on a weekend or holiday.

*Miller* is directly on point.  In that case, the district court entered an order requiring all dispositive motions to be filed by "3/31/2012."  March 31, 2012 was a Saturday, so the defendants filed their motion for summary judgment on the next business day, Monday, April 2.  The district court denied the motion on the grounds that it was untimely, and held that Rule 6(a), based on its plain language, applies only "[w]hen the period is stated in days."  To be sure, the district court further noted that the Advisory Committee Notes to Rule 6(a) provide as follows:

> The time-computation provisions of subdivision (a) apply only when a time period must be computed.  *They do not apply when a fixed time to act is set*.  The amendments thus carry forward the approach taken in *Violette v. P.A. Days, Inc.*, 427 F.3d 1015, 1016 (6th Cir. 2005) (holding that Civil Rule 6(a) "does not apply to situations where the court has established a specific calendar day as a deadline"), and reject the contrary holding of *In re American Healthcare Management, Inc.*, 900 F.2d 827, 832 (5th Cir. 1990) (holding that Bankruptcy Rule 9006(a) governs treatment of date-certain deadline set by court order).  *If, for example, the date for filing is "no later than November 1, 2007," subdivision (a) does not govern*.  But if a filing is required to be made "within 10 days" or "within 72 hours," subdivision (a) describes how that deadline is computed.

*Miller*, 2012 WL 1589249, at *1 (citing Fed. R. Civ. P. 6 Advisory Committee Notes, 2009 Amendments) (emphasis added).  Therefore, the calculation of time under Rule 6(a) did not apply to the "3/31/2012" deadline in *Miller*, and it does not apply to the "September 1, 2013" court-ordered deadline here.

The *Violette* case cited in the Advisory Committee Notes is also on point.  *Violette* involved a situation where persons seeking to opt out of a class

action were required to send notices "postmarked no later than February 14, 2004." That deadline fell on a Saturday.  In holding that notices sent after that deadline were untimely, the Sixth Circuit observed that "Rule 6(a), by its very nature, is only necessary when a court orders something to be done in a particular number of days." *Violette,* 427 F. 3d at 1018.  The court further held that "filing deadlines are inherently arbitrary but, despite the potential harshness of their application, they must be enforced in the absence of equitable remedies." *Id.* at 1019.

Accordingly, the law is clear:  The September 1, 2013 deadline in the court's Scheduling Order meant just what it said.  It did not mean September 3. Plaintiff's failure to adhere to the court-ordered deadline is not a technicality that should be excused.  If two-day late filings are acceptable, then five-day or ten-day late filings might be equally acceptable, and so on, and the deadlines set by the court would be meaningless.  As the Supreme Court has stated, "[f]iling deadlines, like statute of limitations, necessarily operate harshly and arbitrarily with respect to individuals who fall just on the other side of them, but if the concept of a filing deadline is to have any content, the deadline must be enforced." *United States v. Locke*, 471 U.S. 84, 100-01 (1985); *see also Justice v. Town of Cicero, Ill.*, 682 F.3d 662 (7th Cir. 2012) (Easterbrook, J.) (holding that a motion for reconsideration was untimely when it was electronically filed at 3:00 a.m., a mere three hours after the filing deadline had expired); *Nafziger v. McDermott Intern.,*

-14-

*Inc.*, 467 F.3d 514, 522-24 (6th Cir. 2006) (affirming district court's striking of an amended complaint that was filed two days after a court-ordered deadline).

This is all the more true now that motion papers are filed electronically through the court's CM/ECF system. With electronic filing, the clerk's office is accessible for purposes of filing papers at any time on any day, even on a Sunday or a holiday, and thus plaintiff could have easily filed his motion to amend in a timely manner. *See Miller*, 2012 WL 1589249, at *3.

Plaintiff also could have sought an extension. But he did not. Plaintiff's motion is therefore untimely. As a result, plaintiff must demonstrate "good cause" under Rule 16(b)(4) as to why he should be allowed to file an amended complaint after the expiration of the deadline in the Scheduling Order. As explained below, plaintiff cannot come close to meeting that standard here.

**B.     Plaintiff Cannot Demonstrate The Requisite "Good Cause" Under Rule 16(b)(4) To Justify A Modification Of The Court's Deadline For Amending Pleadings Under The Scheduling Order.**

The Third Circuit has observed that "scheduling orders are at the heart of case management," and if they can be flouted every time counsel determines he or she made a tactical error, "their utility will be severely impaired." *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 341 n.4 (3d Cir. 1990). Rule 16(b)(4) provides that scheduling orders "may be modified *only for good cause and with the judge's consent*." (emphasis added). The Advisory Committee Notes to this Rule

explain that establishing a rigid timetable for the amendment of pleadings "assures that at some point both the parties and the pleadings will be fixed." FED. R. CIV. P. 16(b) Advisory Committee Notes (1983 Amendment).

Thus, when a party moves for leave to amend his complaint after the deadline in the scheduling order for amendments has expired, that party "must satisfy the requirements of Rule 16(b)(4)." *Capers v. FedEx Ground Package System, Inc.*, 2012 WL 5818137, *2 (D.N.J. Nov. 15, 2012). A showing of "good cause" under Rule 16(b)(4) depends entirely on the diligence of the moving party – *i.e.*, the moving party "must show that despite its diligence, it could not reasonably have met the scheduling order deadline." *Hutchins v. United Parcel Service, Inc.*, 2005 WL 1793695, *2-3 (D.N.J. July 26, 2005). In addition, "[t]he absence of prejudice does not constitute good cause." *Harbor Laundry Sales, Inc. v. Mayflower Textile Servs. Co.*, 2011 WL 6303258 (D.N.J. Dec. 16, 2011); *see also Hutchins*, 2005 WL 1793695, at *3 ("the absence of prejudice to the nonmovant is not a consideration under the good cause standard.") (citing *Globespanvirata, Inc. v. Texas Instruments Inc.*, 2005 WL 1638136, at *3 (D.N.J. July 12, 2005)).

When the moving party cannot show he was diligent in attempting to meet the amendment deadline under the scheduling order, and cannot otherwise establish "good cause" under Rule 16(b)(4), a motion for leave to amend should be denied. *See Eastern Minerals & Chemicals Co.*, 225 F.3d 330, 340 (3d Cir. 2000)

-16-

(affirming district court's finding that good cause had not been shown under Rule 16(b) where plaintiff's motion for leave to add a RICO claim was filed after the court-ordered deadline); *Treusch v. Center Square Supermarket, LLC*, 11-cv-4874-JBS-JS, 2013 WL 1405031, *4 (D.N.J. April 5, 2013) (Simandle, J.) (denying motion for leave to amend where "Plaintiff has not attempted to show good cause under Rule 16(b)(4) to amend this scheduling order deadline."); *Capers*, 2012 WL 5818137, at *3 ("since Plaintiffs violated the Scheduling Order without good cause, the Court will not extend the time for amendment under Rule 16(b)(4).").

Plaintiff ignores the Rule 16 standard in his brief.  Instead, he argues, without any real discussion or analysis, that his request for leave to file a second amended complaint should be governed by Rule 15(a), which states that courts "should freely give leave when justice so requires."  *Pl. Br.* at 3.  But the courts have consistently held that an evaluation of "good cause" under Rule 16 is *not* coextensive with an inquiry into the propriety of a proposed amended pleading under Rule 15.  *See Eastern Minerals*, 225 F.3d at 340 (affirming district court's conclusion that the plaintiff's untimely motion for leave to amend was governed by Rule 16(b), and agreeing with the district court's determination that it "need not examine [plaintiff's] Rule 15(a) argument"); *Hutchins*, 2005 WL 1793695, at *3

("contrary to plaintiff's argument that he would be entitled to amend his Complaint under the more lenient Rule 15 standard . . . Rule 16 governs this case").[1]

Accordingly, plaintiff's conclusory discussion of the Rule 15 standard is inapposite.  The only standard that is applicable here is the "good cause" standard under Rule 16(b), and, thus, the only proper inquiry on this motion is whether plaintiff was diligent in attempting to meet the September 1, 2013 deadline in the court's Scheduling Order before seeking leave to add a host of new claims and parties.  If plaintiff cannot show the required diligence, "the inquiry should end." *Johnson*, 975 F.2d at 609.  Plaintiff was clearly not diligent here.

There are no new facts in the proposed second amended complaint. The proposed amendment is based on the same allegations that plaintiff has been making all along:  That he went into the Brick Houlihan's and ordered a few beers, that he did not know the price of each beer before he ordered, and that he now believes the $4 price was too high and should have been disclosed on the menu.

---

[1] *See also In re Milk Products Antitrust Litigation*, 195 F.3d 430, 437-438 (8th Cir. 1999) (rejecting plaintiffs' argument that the district court erred in considering only the "good cause" standard under Rule 16(b) instead of the liberal amendment standard of Rule 15(a)); *Sosa v. Airprint Systems, Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998) ("[B]ecause [plaintiff's] motion to amend was filed after the scheduling order's deadline, [plaintiff] must first demonstrate good cause under Rule 16(b) before we will consider whether amendment is proper under Rule 15(a)."); *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992) ("[a] court's evaluation of good cause is not coextensive with an inquiry into the propriety of the amendment under . . . Rule 15.").

In his brief, plaintiff explains that he is seeking to add claims for "violations of New Jersey Consumer Fraud Act, N.J.S.A. 56:8-6, and Truth in Consumer Contract, Warranty, and Notice Act (TCCWNA), N.J.S.A. 56:12-14 to -18." *Pl. Br.* at 1.  But plaintiff has known about those claims since before this lawsuit was even filed over two years ago – as those claims were asserted in the original complaint filed against Houlihan's in November 2011.  *See* ECF No. 1-1.  Plaintiff voluntarily decided to abandon those claims in March 2012 when he filed an amended complaint that only asserted claims for breach of contract and unjust enrichment.  *See* ECF No. 15.  In fact, in successfully opposing Houlihan's motion to dismiss in June 2012, plaintiff trumpeted that this case was *not* based on claims under the Consumer Fraud Act or TCCWNA.  *See* ECF No. 22 at 3.  Plaintiff cannot offer up any reason to show that "good cause" now exists – 16 months later – for those claims to be reactivated after the deadline for amending pleadings has expired.  *See Sosa*, 133 F.3d at 1419 (denying plaintiff's belated motion for leave to amend a complaint where "the information supporting the proposed amendment to the complaint was available to [plaintiff] even before she filed suit.").

The same is true for plaintiff's belated attempt to join new defendants.  Plaintiff has known from the beginning of this case that Houlihan's position is that the franchisee, not Houlihan's, owned, operated, and set the prices for drinks at the Brick restaurant.  *See* ECF No. 17-1 at 10-11; *Decl. of Cynthia Parres* (ECF No.

17-2) ¶¶ 6-8.  More specifically, plaintiff has known that Brick Food, L.L.C. was the franchisee of the Brick restaurant since at least February 2013, when Houlihan's served its Rule 26 disclosures (*Halper Decl.*, Ex. C) – and plaintiff has known the names of the members of Brick Food, L.L.C. since at least May 2013, when Houlihan's produced the Franchise Agreement (*Halper Decl.*, Ex. D).  In fact, at the May 28, 2013 status conference, the court expressly asked plaintiff's counsel whether he was going to amend the complaint to join the franchisee as a defendant, to which plaintiff's counsel responded:  "yes, that may be a possibility." *Id.*, Ex. A (5/28/13 Tr. 3:15-25).

As such, plaintiff clearly could have attempted to join Brick Food, L.L.C. and its individual members as defendants months before the September 1 deadline in the Scheduling Order expired.  But he did not.  Plaintiff argues that his proposed amendment is based on "wrongdoing" that was "revealed in recent discovery" (*Pl. Br.* at 1) – but, of course, plaintiff does not identify what "recent discovery" he is talking about.  Since the July 26 status conference with the court, there has been no discovery taken.  To be clear:  no additional documents were requested or produced, no additional interrogatories were served, and no depositions were taken. *Halper Decl.*, ¶ 8.  Therefore, it appears that the *only* basis for plaintiff's attempt to join the individual defendants is that they happen to be the

owners of Brick Food, L.L.C.  Plaintiff has known that information since at least May 2013.  *See Halper Decl.*, Ex. D (HRI000045).

In short, plaintiff has had all the necessary information for his proposed amendment long before the court-ordered September 1 deadline expired. He therefore has not been diligent in meeting the court-ordered deadline, and he cannot show the required good cause to justify modifying the September 1 deadline in the court's Scheduling Order.  *See Parker v. Columbia Pictures Industries*, 204 F.3d 326, 340-341 (2d Cir. 2000) (good cause did not exist to allow plaintiff to file an untimely amended complaint because plaintiff "had all the information necessary to support a breach of contract claim" before deadline in the scheduling order expired).  Rule 16's good cause standard does not permit plaintiff to amend its complaint simply because he has belatedly decided to assert new legal theories.  His motion should therefore be denied.[2]

## II.  PLAINTIFF'S MOTION SHOULD ALSO BE DENIED BECAUSE HIS PROPOSED AMENDMENT IS FUTILE AS A MATTER OF LAW.

Separate and apart from failing to demonstrate the requisite good cause to modify the Scheduling Order, plaintiff's motion should also be denied

---

[2]  To the extent plaintiff will argue that his failure to meet the court's September 1, 2013 deadline for amending pleadings is somehow excused because the discovery cut-off date has not yet expired, such an argument is meritless.  *See Rent-A-Center Inc. v. 47 Mamaroneck Avenue Corp.*, 215 F.R.D. 100, 103 (S.D.N.Y. 2003) (rejecting the argument that an expired deadline for amendments was excused when the court thereafter extended the deadline for completing discovery).

because the proposed amendment is futile as a matter of law – and, therefore, allowing the amendment will only lead to more motion practice, expanded discovery, and will further delay the resolution of this case.  *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997) (amendment of a complaint is futile if it fails to state a claim upon which relief can be granted).

Plaintiff's counsel attempted to assert the same TCCWNA claim against Applebee's and IHOP that he is now attempting to assert (again) in this case.  *See Watkins v. Dine Equity, Inc.*, 11-CV-7182-JBS-AMD, 2012 WL 3776350 (D.N.J. Aug. 29, 2012) and 2013 WL 396012 (D.N.J. Jan. 31, 2013). Like here, the claim in *Watkins* was based on the fact that Applebee's and IHOP omitted "the price of soda, beer, wine, coffee and other drinks from their restaurant menus."  *Id.*  Judge Simandle dismissed that case, and held as matter of law, based on the statute, its legislative history, and state and federal case law, that TCCWNA did not require New Jersey restaurants to list prices for drink items on their menus. *Id.*   Judge Simandle is also the district judge in this case.   The same legal arguments asserted by Applebee's and IHOP would apply with equal force here. Accordingly, plaintiff's proposed TCCWNA claim is futile.

Plaintiff's proposed Consumer Fraud Act claim is also futile.  Plaintiff will likely focus on *Dugan v. TGI Friday's Inc.*, 2011 WL 5041391 (N.J. App. Div. Oct. 25, 2011) (per curiam), which permitted a Consumer Fraud Act claim

against TGI Friday's to survive a motion to dismiss.  As Judge Simandle observed in *Watkins*, however, *Dugan* is not a controlling decision; rather, it is an unpublished decision by an intermediate state appellate court and, thus, it is not binding on this court.  In addition, the issue in *Dugan* was whether the failure to disclose prices of beverages on a menu violated the Consumer Fraud Act or TCCWNA, when the restaurant charged one price for drinks at the bar ($2) and another price at a table ($3.59).  *Dugan*, 2011 WL 5041391, at *1.  The plaintiff in *Dugan* therefore pleaded an ascertainable loss (the difference in prices) that satisfied the pleading requirements of the Consumer Fraud Act.  Here, however, plaintiff alleges that he was charged the *same price* ($4) for the beers he ordered and consumed at the bar and the dining area of the Brick restaurant.  *SAC* ¶¶ 17-24.  Thus, *Dugan* is distinguishable.  Plaintiff's Consumer Fraud Act claim in this case would fail because, among other reasons, he cannot show the required ascertainable loss under the statute.  *See Cannon v. Cherry Hill Toyota, Inc.*, 161 F. Supp. 2d 362, 373 (D.N.J. 2001). ("the [CFA] does not provide for recovery of statutory damages where a plaintiff cannot show actual harm."); *Arcand v. Brother Intern. Corp.*, 673 F. Supp. 2d 282, 300 (D.N.J. 2009) ("At the very least, a consumer must be able to quantify or measure what loss he has suffered or will suffer as a result of the unlawful conduct.").

Finally, plaintiff's attempt to join Eric Mund, Charles Mund, and Arnold Runestad as defendants is beyond futile.  The only basis for attempting to join those individuals appears to be that they are the three members of Brick Food, L.L.C., and thus are purportedly "involved with menu formatting and beverage pricing" for the restaurant.  *SAC* ¶ 5.  That bare allegation is not nearly enough to support a claim, let alone a fraud claim, against the individual owners of a limited liability company.  Indeed, to allow such a claim to proceed against the individual owners of Brick Food, L.L.C. would ignore the long-standing protections afforded to corporate shareholders and members.  *See Printing Mart-Morristown v. Sharp Elec. Corp.*, 116 N.J. 739, 761 (1989) (New Jersey law regards corporations "as an entity distinct from its individual officers, directors, and agents.").  Although liability can be imposed in limited circumstances when an individual knowingly and affirmatively commits a tort, an individual cannot be held liable under the Consumer Fraud Act "merely because of the act of the corporate entity."  *Allen v. V and A Bros., Inc.*, 208 N.J. 114, 132 (2011).

Here, there are no allegations in the proposed amendment that Eric Mund, Charles Mund, or Arnold Runestad entered into a contract with plaintiff.  There are no allegations that those individuals personally sold beer to plaintiff, or offered to sell beer to plaintiff.  There are no allegations that those individuals made any statements or misrepresentations to plaintiff or had any contact with him

whatsoever.  There are no allegations that those individuals were in the restaurant when plaintiff was supposedly there.  And there are no allegations that Brick Food, L.L.C. does not adhere to the formalities required for a limited liability company or that the individuals are in any way using the company to defraud creditors.  Thus, there is simply no basis to join the individuals as defendants in this case.  *See Pullman v. Alpha Media Publishing, Inc.*, 2013 WL 1290409, *29-30 (S.D.N.Y. Jan. 11, 2013) (granting a motion to dismiss New Jersey Consumer Fraud Act claims against individual defendants); *Wiater Building & Design, Inc. v. Gutierrez*, 2013 WL 28090 (N.J. App. Div. Jan. 3, 2013) (per curiam) (same).

As the court recognized at the July 26 status conference, plaintiff's allegations against the individual defendants must satisfy the requirements of "Rule 11" and "*Iqbal* and *Twombly*."  *Halper Decl.*, Ex. B (7/26/13 Tr. 9:11-10:5). Plaintiff has not done that here.  He has merely alleged that the individuals own Brick Food, L.L.C. and that they are supposedly involved in the company's pricing of drinks at the restaurant.  *SAC* ¶ 5.  To allow a claim to proceed against the individuals based on that bare allegation would render the company's corporate structure meaningless, and would unnecessarily subject the individuals to the

extreme sanctions imposed by the Consumer Fraud Act, including treble damages and recovery of attorneys' fees.  Plaintiff's motion should therefore be denied.[3]

## **CONCLUSION**

Houlihan's respectfully submits that plaintiff's motion for leave to file a second amended complaint should be denied, with the sole exception of allowing plaintiff to join Brick Food, L.L.C. as a defendant.  Thus, this case should proceed based on plaintiff's chosen claims and theories for breach of contract and unjust enrichment, and, pursuant to Judge Simandle's directive, the merits of plaintiff's claims should be tested soon on summary judgment.

---

[3] Plaintiff does not mention his proposed claims for civil conspiracy and "agency" in his brief.  In any event, both claims are futile.  First, it does not appear that "agency" is a recognized claim under New Jersey law.  Second, a civil conspiracy is "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage." *Banco Popular N. Am. v. Gandi*, 184 N.J. 161, 177 (2005).  "Most importantly, the gist of the claim is not the unlawful agreement, but the underlying wrong which, absent the conspiracy, would give a right of action." *Id.* at 177-178.  Here, plaintiff does not bother to allege what sort of unlawful agreement was made, between whom, or what overt act of fraud took place.  Because plaintiff cannot establish an underlying claim for fraud, his civil conspiracy claim automatically fails. *See Mercedes-Benz USA, LLC v. ATX Group, Inc.*, 2010 WL 3283544 (D.N.J. Aug. 18, 2010).

Respectfully submitted,

Jason Halper
Ryan Cooper
**LOWENSTEIN SANDLER LLP**
65 Livingston Avenue
Roseland, New Jersey  07068
973.597.2500
973.597.2400 (Fax)
jhalper@lowenstein.com
*Attorneys for Defendant*
*Houlihan's Restaurants, Inc.*


By:  _s/ Jason Halper_____

Dated:  September 27, 2013